UNITED STATES DISTRICT COURT
EASTERN DISTRICT COURT
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 13-CV-31-KSF

JAMES RAY HOSKINS                                       PLAINTIFF

v.                         **OPINION & ORDER**

CAROLYN W. COLVIN,
Acting Commissioner of Social Security                  DEFENDANT

\* \* \* \* \* \* \* \* \*

The plaintiff, James Ray Hoskins, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying his claim for supplemental security income ("SSI") based on disability. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

**I.      OVERVIEW OF THE PROCESS**

In determining whether a claimant has a compensable disability under the Social Security Act, the regulations provide a five-step sequential process which the administrative law judge must follow. 20 C.F.R. § 404.1520(a)-(e); *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 529 (6th Cir. 1997). The five steps, in summary, are as follows:

(1)      If the claimant is currently engaged in substantial gainful activity, he is not disabled.

(2)      If the claimant is not doing substantial gainful activity, his impairment must be severe before she can be found disabled.

(3)      If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous

period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

(4) If the claimant's impairment does not prevent him from doing past relevant work, he is not disabled.

(5) Even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Id*. The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987). If the administrative law judge reaches the fifth step without a finding that the claimant is disabled, then the burden shifts to the Commissioner to consider his residual functional capacity, age, education, and past work experience to determine if he could perform other work. If not, he would be deemed disabled. 20 C.F.R. 404.1520(f). Importantly, the Commissioner only has the burden of proof on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her v. Commissioner of Social Security*, 203 F.3d 388, 391 (6th Cir. 1999).

The decision of the Commissioner must be supported by substantial evidence. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). Once the decision of the Commissioner is final, an appeal may be taken to the United States District Court pursuant to 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to the proper legal standards. *See Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial Evidence" is defined as "more than a mere scintilla of evidence but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*.

In reviewing the decision of the Commissioner, courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id*. Rather, the Court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the Court might have decided the case differently. *See Her*, 203 F.3d at 389-90. However, the court must review the record as a whole, and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for a rehearing or to reverse and order benefits granted. The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 111 S.Ct. 2157, 2163 (1991). Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Id*. at 176.

## II. PLAINTIFF'S MEDICAL HISTORY AND THE ADMINISTRATIVE RECORD

In support of his claim of disability, Plaintiff relies on various medical reports and records. First, he points to the medical records and physical residual functional capacity statement of his treating physician, Dr. Robert C. Hoskins. Plaintiff began treatment with Dr. Hoskins in early 2011.

In January, February, and March 2011, Plaintiff's chief complaint was anxiety [TR 329-334]. Medication changes were made, and Plaintiff was referred to a cardiologist. On September 26, 2011, Dr. Hoskins prepared his residual functional capacity statement, wherein he diagnosed severe tremors of the hands as well as body tremors [TR 348]. He noted unsteady gait, tenderness of the upper spine and severe immediate notable tremors [Tr 349]. Dr. Hoskins opined that Plaintiff could not lift more than 10 pounds at any time, sit more than 5-6 hours in an 8-hour day, stand or walk more than 2 hours in an 8-hour day [TR 348]. He concluded that Plaintiff's ability to reach, handle, feel, push and pull are affected due to his tremors [TR 349].

On May 26, 2010, Plaintiff was examined by Dr. Barry Burchett [TR 206]. At that time, Plaintiff complained of shortness of breath. Dr. Burchett noted that Plaintiff smokes one-half pack of cigarettes per day. He diagnosed Plaintiff with emphysema/COPD, osteoarthritis of the right knee, gastroesophageal reflux disease, and possible type II diabetes [TR 209].

Plaintiff was later examined by Greg V. Lynch, Ph.D., a clinical psychologist, on June 8, 2010. Dr. Lynch took a history and performed a mental status examination and a clinical interview [TR 217-221]. He then diagnosed Anxiety Disorder, NOS, and Major Depressive Disorder [TR 220]. He also assessed a current Global Assessment of Functioning ("GAF") of 56. He summarized Plaintiff's condition as follows:

> The claimant's capacity to understand, remember, and carry out instructions toward performance of simple, repetitive tasks is affected by the impairment with slight limitations noted. The claimant's ability to tolerate stress and pressure of day-to-day employment is affected by the impairment with moderate limitations noted. The claimant's ability to sustain attention and concentration toward performance of simple, repetitive tasks is affected by the impairment with moderate limitations noted. The claimant's ability to respond appropriately to supervision, coworkers, and work pressures in a work setting is affected by the impairment with moderate limitations noted. . . .

[TR 220]. Finally, as to his psychological prognosis, Dr. Lynch noted that it is fair to good, but only with appropriate mental health intervention [TR 221].

Finally, on August 12. 2010, Plaintiff was examined by Dan Vandiver, Ph.D. [TR 240-57]. Dr. Vandiver is a state agency consultant for the Social Security program. Dr. Vandiver opined that Plaintiff can "[u]nderstand and remember simple and detailed instructions and procedures requiring brief initial learning periods" [TR 256]. Also, Plaintiff can "[s]ustain concentration, effort and pace for simple tasks requiring little independent judgment" and involving minimal variations, doing so at requisite schedules and breaks. Dr. Vandiver found that Plaintiff can "[i]nteract frequently as needed with supervisors and peers," but requiring no more than occasional interaction with the public. Finally, he noted that Plaintiff can adapt adequately to situational conditions and changes with reasonable support and structure. [TR 256].

Plaintiff filed this claim for SSI benefits on March 8, 2010 [TR 128, 141]. He claims he is disabled due to heart problems, nerve problems, breathing problems and tremors [TR 33]. On the date of his application, Plaintiff was fifty-five years old. He has at least a high school education and no past relevant work [TR 160, 169, 185].

After his initial claim was denied, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on September 29, 2011 [TR 27-55]. At that time, Plaintiff testified that he suffers daily from tremors, his breathing is bad, his heartbeat is irregular, he cannot sleep, and he suffers from depression and anxiety [TR 35-37]. He described his daily activities as limited to staying at home, small amounts of cleaning and cooking, and visiting with family and friends [TR 39].

Also at the hearing, the ALJ heard testimony from the vocational expert, Tina Stambaugh. She was asked to consider the following hypothetical:

> Please assume an individual the claimant's age, education and work – well education and lack of work experience - - who would be limited to lifting or carrying 50 pounds occasionally, 25 pounds frequently; standing and/or walking a total of about six hours in an eight-hour workday; sitting about six hours in an eight-hour workday; occasionally climb ramps or stairs; never climb any ladders, ropes, or scaffolds; occasionally balancing and stooping, kneeling, crouching; never crawling; occasional handling – well excuse me – frequently handling and occasional fingering; should avoid exposure to hazards such as dangerous machinery or unprotected heights, fumes, odors, dusts, gases, and poor ventilation in temperature extremes, wetness, and humidity. Please further assume that this individual would be limited to object-focused work environment in which contact with coworkers and supervisors is casual and infrequent and in a non-public work setting, simple repetitive tasks; can maintain attention and concentration for two hour segments during an eight hour workday and is able to adapt to gradual changes in work environment.

[TR 51-52]. Based on this hypothetical, the vocational expert testified that Plaintiff could work as a general factory helper, a position of which there are 4,400 jobs in Kentucky and 226,000 in the country [TR 52].

After considering all the evidence, the ALJ issued a decision finding Plaintiff not disabled on October 18, 2011 [TR 22]. In reaching his opinion, the ALJ began his analysis at step one by determining that Plaintiff has not engaged in substantial gainful activity since his application date of March 8, 2010 [TR 15]. At step two, the ALJ found that Plaintiff suffers from the following severe impairments: anxiety disorder, not otherwise specified; major depressive disorder; chronic obstructive pulmonary disease; essential/familial tremor; osteoarthritis, right knee, status post remote gunshot wound; and bradycardia [TR 15].

Continuing on to the third step, the ALJ determined that these impairments or combination of impairments are not associated with clinical signs and findings that meet or equal in severity any

6

of the listed impairments [TR 17]. *See* 20 C.F.R. pt. 404, subpt. p, app'x 1. Next, the ALJ determined Plaintiff's residual functional capacity ("RFC"). An RFC is the assessment of a claimant's maximum remaining capacity to perform work-related activities despite the physical and mental limitations caused by the claimant's disability. 20 C.F.R. § 404.1545(a)(1), 416.945(a)(1). In this case, the ALJ found that Plaintiff has the RFC to perform the exertional and nonexertional demands of medium work, with the following restrictions:

> He can lift or carry 50 pounds occasionally, 25 pounds frequently; stand/walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; occasionally climb ramps or stairs; never climb ladders, ropes and scaffolds; occasionally balance, stoop, kneel, or crouch; never crawl; frequently handle; occasionally finger; avoid all exposures to temperature extremes, wetness, humidity, fumes, odors, dusts, gases, poor ventilation, and hazards, such as dangerous machinery or unprotected heights; object focused work environment in which contact with co-workers and supervisors is casual and infrequent in a non-public work setting; simple repetitive work tasks; can maintain attention and concentration for 2-hour segments during an 8-hour workday; able to adapt to gradual changes in a routine work environment.

[TR 19]. Because Plaintiff has no past relevant work, the ALJ moved on to the fifth and final step of the sequential evaluation process [TR 21].

At the fifth and final step, relying on the testimony of the vocational expert and taking into consideration Plaintiff's age, educational background, lack of relevant work experience, and RFC, the ALJ found that Plaintiff could perform a significant number of jobs in the national economy. [TR 21]. As a result, the ALJ concluded that Plaintiff was not disabled [TR 21].

Plaintiff subsequently requested review by the Appeals Council. The Appeals Council denied Plaintiff's request for review on January 22, 2013 [TR 1-3]. He has exhausted his administrative remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

## III.    ANALYSIS

On appeal, Plaintiff argues generally that substantial evidence does not support the Commissioner's decision. He contends that his physical and mental impairments are of such severity that he cannot engage in any type of substantial gainful employment. While Plaintiff did testify that he thought he could lift 50 pounds [TR 40], he argues that all of the medical evidence suggests otherwise and that he should have been limited to sedentary work. In fact, he argues, based on his age, education and work experience, a finding that he could only perform sedentary work would qualify him for an award of benefits.

In support of his argument, Plaintiff relies heavily on the opinion of Dr. Hoskins. While Dr. Hoskins is Plaintiff's treating physician, the ALJ gave it "little probative weight" [TR 21] because his opinion was based largely on subjective complaints and lacked any objective medical evidence. This Court agrees with the ALJ's decision to discount Dr. Hoskins' opinion.

It is well established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters*, 127 F.3d at 530-31; *see also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference"). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. *Harris*, 756 F.2d at 435. If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

8

inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 404.1527(d)(2); *see also Walters*, 127 F.3d at 530.

The Social Security regulations recognize the importance of longevity of treatment, providing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. . . ." 20 C.F.R. § 404.1527(d)(2). Thus, when weighing the various opinions and medical evidence, the ALJ must consider other pertinent factors, such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). In terms of a physician's area of specialization, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5).

In the Sixth Circuit, however, a treating source opinion should be given controlling weight only when it is well-supported by clinical and laboratory findings, and is consistent with other evidence of record. *Houston v. Secretary of Health and Human Services*, 736 F.2d 365, 367 (6th Cir. 1984); *Crouch v. Secretary of Health and Human Services*, 909 F.2d 852, 856 (6th Cir. 1990); *see also*, 20 C.F.R. §§ 416.927(b), (d)(2), (3)-(4). The Commissioner is not bound by a mere conclusory statement of a treating physician, particularly where it is unsupported by detailed, objective criteria and documentation. *See Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213

(6th Cir. 1986). In other words, the supportability of a treating physician's opinion depends on the degree to which the source presents relevant evidence to support the opinion, and in particular, support the opinion with medical signs and laboratory findings. 20 C.F.R. §§ 416.927(a), (d)(3). "It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, *2 (1996).

In *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004), the Sixth Circuit held that if an ALJ declines to accord controlling weight to a treating physician opinion, the ALJ must give good, specific reasons for the weight accorded the opinion. *Id*. at 544. This is essentially a procedural safeguard, ensuring that a claimant understands the disposition of his case, and that the ALJ applied the treating physician rule so as to provide meaningful judicial review of that application. *Id*. at 544-45.

In this case, Dr. Hoskins failed to provide sufficient objective medical findings or other evidence to support his opinion, either in the form he completed or in his medical records. *See* 20 C.F.R. § 416.927(c)(3); *Walters*, 127 F.3d at 529-30. Other than noting that Plaintiff had a tremor and exhibited some signs of anxiety or depression, Dr. Hoskins' examination findings were unremarkable, including clear lungs and no musculoskeletal signs [TR 330, 332, 334, 336, 339]. Dr. Hoskins did diagnose Plaintiff with a variety of medical conditions, but a diagnosis alone says little about the severity of any condition. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). Moreover, Dr. Hoskins' conservative treatment of Plaintiff, and Plaintiff's conservative treatment in general, undermines Dr. Hoskins' opinion and provides further support for the ALJ's findings. *See* 20 C.F.R.

§§ 416.927(c)(1), (c)(2), 416.929(c)(3)(v); *Helm v. Commissioner*, 405 Fed.Appx. 997, 1001 (6th Cir. 2001); *Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990).

Not only does Dr. Hoskins' opinion fail due to lack of objective medical evidence, it is also inconsistent with the record as a whole. As the ALJ found, other doctors who treated and examined Plaintiff did not find his physical or mental condition to be as limited as Dr. Hoskins opines. For example, Dr. Burchett found that Plaintiff had a respiratory impairment and displayed shortness of breath [TR 208, 209, 213], but again, this diagnosis alone does not establish any limitations. *See Higgs*, 880 F.2d at 863. His examination revealed clear lungs without wheezes, rales, or rhonci and only questionable diminished breathing sounds. He noted that Plaintiff seemed mildly short of breath [TR 16, 208]. A pulmonary function test revealed only mild pulmonary disease [TR 213]. Dr. Burchett made no mention of tremors. In total, Dr. Burchett's objective findings were only mildly limiting and are in contrast to Dr. Hoskins.

Additionally, Plaintiff's own description of his activities of daily living are not consistent with Dr. Hoskins' opinion. Plaintiff admitted he performed household chores in short intervals, visited with family and friends, occasionally cooked, and watched television [TR 177-83, 219]. Although not extensive, these activities are not indicative of the disabling limitations he alleges or as are opined by Dr. Hoskins. Due to the lack of objective findings, the ALJ properly discounted Dr. Hoskins' opinion and provided good reasons for so doing. *See* 20 C.F.R. 416.927(c)(3); *Walters v. Commissioner*, 127 F.3d 525, 529-30 (6th Cir. 1997).

To the extent that the ALJ erred generally by failing to properly assess his RFC, Plaintiff's argument also fails. The record reflects that the ALJ carefully considered Plaintiff's testimony, the medical records, and other relevant evidence in assessing his RFC. While Plaintiff argues that he

11

was limited to sedentary work, he has failed to provide evidence proving he was unable to perform the limited range of medium work as found by the ALJ. The ALJ was entitled to consider Plaintiff's testimony that he could probably lift fifty pounds, and there is no evidence that the ALJ put any undue reliance on the statement, particularly in light of all the other medical evidence supporting the ALJ's assessment.

Plaintiff also argues that the ALJ erred by failing to properly assess his mental condition. Specifically, Plaintiff argues that the report of Dr. Lynch supports his allegations of a disabling mental condition. However, this court's review of Dr. Lynch's assessment reveals that Dr. Lynch's mental status findings did not indicate that Plaintiff's mental condition was of disabling severity. His GAF score of 56 represents only moderate symptoms or moderate difficulties. *DeBoard v. Commissioner of Social Security*, 211 Fed. Appx. 411, 415 (6th Cir. 2005). Moreover, Dr. Lynch's report is consistent with the opinion of Dan Vandiver, Ph.D., a state agency consultant. As a state agency consultant, Dr. Vandiver is considered an expert in Social Security disability programs, and his opinion is entitled to great weight if the evidence supports it. *See* 20 C.F.R. § 416.927(e)(2)(i); SSR 96-6p (1996).

In sum, Plaintiff has failed to meet his burden of proving that his condition caused more disabling limitations than those found by the ALJ. The ALJ properly considered the relevant evidence and properly analyzed all the evidence in accordance with the sequential evaluation process. As set out above, substantial evidence supports the ALJ's findings, and her conclusion that Plaintiff is not disabled within the meaning of the Social Security Act.

## IV. CONCLUSION

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

(1) the plaintiff's motion for summary judgment [DE #10] is **DENIED**;

(2) the defendant's motion for summary judgment [DE #11] is **GRANTED**;

(3) the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

(4) a judgment consistent with this Opinion & Order will be entered contemporaneously.

This February 14, 2014.

Signed By:
*Karl S. Forester* KSF
**United States Senior Judge**